# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD SOUTNER & JANELLE SOUTNER,
    Plaintiffs

v.

COVIDIEN, LP,
    Defendant

No. 1:17-cv-02178

(Judge Kane)

## MEMORANDUM

Before the Court is Defendant Covidien, LP ("Defendant")'s motion to dismiss Plaintiffs Ronald Soutner and Janelle Soutner's ("Plaintiffs") amended complaint (Doc. No. 8), pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 12). For the reasons provided herein, the Court will deny Defendant's motion without prejudice, and permit Plaintiffs to file a second amended complaint.

## I. BACKGROUND[1]

Defendant, a Delaware limited partnership headquartered in Mansfield, Massachusetts, designs, manufactures, and sells medical devices, including various surgical meshes. (Doc. No. 8 ¶¶ 3-5.) One such mesh, Parietex ProGrip Mesh, a type of mesh used in hernia repair surgeries, was implanted in Plantiff Ronald Soutner ("Soutner") during a surgical procedure on December 20, 2011, and is the subject of the instant action. (Id. ¶ 4.)

Hernias are caused by the "penetration of fatty tissue, intestine, or organs through a weakened or compromised location in muscle of [sic] connective tissue." (Id. ¶ 13.) As stated in

---

[1] The following background is taken from Plaintiffs' amended complaint. (Doc. No. 8.) The allegations set forth in the amended complaint are accepted as true for the purpose of the instant motion to dismiss. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a 12(b)(6) dismissal, [the Court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

the amended complaint, hernia repairs are "common surgeries" – they are performed in the United States more than one million times each year – and inguinal hernia repairs make up approximately 80% of those procedures. (Id. ¶ 17.) Surgical mesh, including Defendant's Parietex ProGrip Mesh, is used during hernia repair surgeries to "strengthen the repair." (Id. ¶ 19.) Defendant's Parietex ProGrip Mesh is intended to be permanently implanted in a patient's body. (Id. ¶ 6.)

According to Plaintiffs, unlike most hernia mesh products, which are polypropylene based, Defendant's Parietex ProGrip Mesh is made of monofilament polyester, which Plaintiffs allege is "flimsy" compared to polypropylene. (Id. ¶¶ 31, 42.) Plaintiffs aver that, as a result, surgeons reported difficulty in handling Defendant's Parietex ProGrip Mesh during hernia repair surgeries. (Id. ¶ 43.) Plaintiffs state that to remedy this issue, Defendant added a layer of collagen to the Parietex ProGrip Mesh, which was intended to make the mesh easier to handle during surgeries. (Id. ¶ 44.) In addition, Plaintiffs allege that Defendant attached micro-grips to the Parietex ProGrip Mesh to prevent the mesh from tearing. (Id. ¶¶ 46-47.) Plaintiffs further aver that the micro-grips have caused patients who have been implanted with the Parietex ProGrip Mesh to experience "debilitating pain" due to the Parietex ProGrip Mesh "contracting and pulling on all of the tissues and nerves upon which it is attached." (Id. ¶ 48.)

On December 20, 2011, Soutner underwent surgery to repair an inguinal hernia on the left side of his groin. (Id. ¶ 50.) During this procedure, Defendant's Parietex ProGrip Mesh was implanted into Soutner to "reinforce tissue affected by the hernia." (Id. ¶¶ 50, 52.) At some point following the procedure, Soutner experienced severe inflammation in the region where the procedure was performed. (Id. ¶ 55.) According to Plaintiffs, the inflammation was so severe that Soutner's vas deferens was "destroyed." (Id.) On October 7, 2013, Soutner underwent an

additional surgical procedure, at which time Defendant's Parietex ProGrip Mesh was removed. (Id. ¶ 53.) During the second procedure, it was determined that "Defendant's Parietex ProGrip Mesh integrated to the surrounding muscles where it had to be dissected off." (Id. ¶¶ 53-54.) During this second procedure, Soutner's vas deferens was removed. (Id. ¶ 55.) Plaintiffs allege that, following the second procedure, Soutner has experienced and continues to experience groin pain and live without his vas deferens. (Id. ¶ 57.) Plaintiffs further allege that as a direct and proximate result of the implanted mesh products, Soutner "suffered, is suffering, and/or will continue to suffer the abovementioned injuries, including the risk of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries, and other complications." (Id. ¶ 58.)

After experiencing the injuries described supra, Soutner commenced this action by filing a complaint against Defendant on October 27, 2017, in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. No. 1 at 10.) In his initial complaint, Soutner asserted the following ten claims against Defendant: strict liability based on defective design and manufacture (Count I) ; strict liability due to a failure to warn (Count II); negligence (Count III); breach of warranty (Count IV); fraudulent misrepresentation (Count V); negligent misrepresentation (Count VI); unjust enrichment (Count VII); breach of express warranty (Count VIII); breach of implied warranty of merchantability (Count IX); and breach of implied warranty of fitness (Count X). (Id. at 21-36.) On November 28, 2017, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441, and 1446. (Id. at 2.) Soutner filed an amended complaint on January 12, 2018, adding his wife Janelle Soutner as a plaintiff and asserting additional claims for punitive damages (Count XI), and loss of consortium (Count XII). (Doc. No. 8 at 25-27.) On February 26, 2018, Defendant filed a motion to dismiss all of the

aforementioned claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 12), and filed a brief in support thereof on March 12, 2018 (Doc. No. 15). Plaintiffs filed their brief in opposition to Defendant's motion to dismiss on March 27, 2018 (Doc. No. 18), to which Defendants filed a reply brief on April 10, 2018 (Doc. No. 19). Having been fully briefed, the motion is now ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the

4

assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, a court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citation and quotation marks omitted).

The Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 8(c)). The Third Circuit, however, "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Id. (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092 (3d Cir. 1975)). Where a complaint "is vulnerable to 12(b)(6)

5

dismissal, a district court must permit a curative amendment unless such an amendment would inequitable or futile." Phillips v. Cnty. Of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

**III. DISCUSSION**

In moving for dismissal of the amended complaint, Defendant contends, <u>inter</u> <u>alia</u>, that Plaintiffs' five tort-based claims[2] and five contract-based claims[3] are time-barred by operation of the applicable statutes of limitations. (Doc. No. 15 at 11-14.) As to each claim, Plaintiffs respond that the relevant limitations period should be tolled pursuant to Pennsylvania's discovery rule or, in the alternative, the doctrine of fraudulent concealment. (Doc. No. 18 at 5-9.) Defendant also moves to dismiss the amended complaint on the grounds that Plaintiffs fail to state a claim as to Plaintiffs' negligence, fraudulent and negligent misrepresentation, and unjust enrichment claims, and that Plaintiffs' strict liability and breach of warranty claims are precluded by Pennsylvania law. (Doc. No. 15 at 14, 18, 26, 32, 35).

**A. Applicable State Law**

A federal court applies the substantive law of its forum state in diversity actions, including statutes of limitations.[4] See Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Guaranty Tr. Co. v. York, 326 U.S. 99 (1945); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Pennsylvania law, the limitations period applicable to Plaintiffs' tort-based claims is two years. 42 Pa. C.S.A. § 5524(2). In Pennsylvania, there are two statutes that establish a limitations period for claims based on breach of contract: one governing contracts for

---

[2] Plaintiffs' tort-based claims include: strict liability (Counts I and II); negligence (Count III); and misrepresentation (Counts V and VI).
[3] Plaintiffs' contract-based claims include: breach of warranty (Counts IV, VIII-X), and unjust enrichment (Count VII).
[4] The parties agree that Pennsylvania law applies to all of Plaintiffs' claims. Accordingly, the Court examines the timeliness of the claims under the limitations periods recognized by Pennsylvania law.

the sale of goods and the other governing all other contracts. See 13 Pa. C.S.A. § 2725(b); 42 Pa. C.S.A. § 5525(a). Plaintiffs assert five contract-based claims, four of which are breach of warranty claims and one of which is an unjust enrichment claim. (Doc. No. 8 at 14, 19, 20, 22, 24.) Plaintiffs' breach of warranty claims are subject to Pennsylvania's four-year statute of limitations found in 13 Pa. C.S.A. § 2725(b). Accordingly, Plaintiffs' unjust enrichment claim is, therefore, subject to Pennsylvania's four-year statute of limitations applicable to contracts implied in law, as established in 42 Pa. C.S.A. § 5524(a)(4). See, e.g., Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 686 (E.D. Pa. 2013).

When determining the applicability of a statute of limitations, Pennsylvania law recognizes the general proposition that a cause of action accrues, and thus the applicable statutory limitations period begins to run, when the injury forming the basis of the action occurs. See, e.g., Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005). There are exceptions to this general rule, two of which Plaintiffs contend are applicable in this case: the discovery rule and the doctrine of fraudulent concealment. (Doc. No. 8 at 10.)

### i. Discovery Rule – Applicable Legal Standard

"The discovery rule is designed to 'ameliorate the sometimes-harsh effects of the statute of limitations,' and it is often applied in medical malpractice and latent disease cases in which the plaintiff is unable to discover his or her injury until several years after the tort occurred." Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) (quoting Cathcart v. Keene Indus. Insulation, 471 A.2d 492, 500 (Pa. Super. Ct. 1984). The rule tolls the accrual of the statute of limitations when the plaintiff is unable, "despite the exercise of due diligence, to know of the injury or its cause." Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). Under the discovery rule, the statutory period "does not begin to run until 'the

7

plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct.'" Id. (quoting Mest, 449 F.3d at 510). The plaintiff "bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury." Mest, 339 F.3d at 411 (citing Cochran v. GAF Corp., 666 A.2d 245, 249 (Pa. 1995). "To demonstrate reasonable diligence, a plaintiff must 'establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protections of their own interests and the interests of others.'" Id. (quoting Cochran, 666 A.2d at 250).

The Supreme Court of Pennsylvania has clarified that reasonable diligence is not "an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." Fine, 870 A.2d at 858. "'[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.'" Id. (alteration in original) (quoting Crouse v. Cyclops Indus., 765 A.2d 606, 611 (Pa. 2000)). "Put another way, [t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him." Id. (quoting Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 31 A. 484, 485 (Pa. 1895)). Pennsylvania applies the discovery rule narrowly, placing a heavy burden on plaintiffs invoking the rule. See Gleason v. Borough of Moosic, 15 A.3d 479, 484 (Pa. 2011). "Where . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the [C]ourt determines that the

discovery rule does not apply as a matter of law." Fine, 870 A.2d at 858-59 (citing Pocono Int'l, 468 A.2d at 471).

### ii. Doctrine of Fraudulent Concealment – Applicable Legal Standard

Like the discovery rule, the doctrine of fraudulent concealment tolls the running of the limitations period. Id. at 860. "The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Id. (citing Deemer v. Weaver, 187 A. 215 (1936)). "Fraudulent concealment may be intentional or unintentional; however, 'mere mistake, misunderstanding, or lack of knowledge is insufficient.'" Bohus, 950 F.2d at 925 (quoting Nesbitt v. Erie Coach Co., 204 A.2d 473 (Pa. 1964)). Like the discovery rule, however, the doctrine of fraudulent concealment "does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." Mest v. Cabot Corp., 449 F.3d at 516 (citing Bohus v. Beloff, 950 F.2d 919, 925-26 (3d Cir. 1991)). "The standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment." Fine, 870 A.2d at 861.

### B. Arguments of the Parties

Defendant argues that Plaintiffs' five tort-based claims and five contract-based claims are barred by operation of the applicable statutes of limitations. (Doc. No. 15 at 11-14.) Defendant asserts that "Plaintiffs do not allege [in their amended complaint] that they diligently pursued the cause of Plaintiff Ronald Soutner's injury after their tort claims expired. Nor could they, because the fundamental injuries for which Plaintiffs now seek relief were obvious to them in

9

October 2013 when the surgeons removed the mesh." (Id. at 12.) Defendant also argues that "Plaintiffs' omission of sufficient 'tolling allegations' requires dismissal of their untimely tort claims, with prejudice." (Id. at 13.)

In opposition, Plaintiffs argue that their claims are not time-barred based on "the application of Pennsylvania's discovery rule and doctrine of fraudulent concealment, which tolls the statute of limitations in this matter." (Doc. No. 18 at 6.) Plaintiffs state that they are "lay persons [sic] and should not be charged with greater knowledge of their physical condition than that possessed by physicians." (Id. at 7.) In addition, Plaintiffs argue that "they could not have discovered through due diligence that their injuries were caused by another party's conduct." (Id.) Further, Plaintiffs have requested that this Court grant them leave to file a second amended complaint to "include the necessary tolling allegations." (Doc. No. 18 at 9.)

        **C.    Whether the Limitations Periods Are Tolled by Operation of the Discovery Rule or the Doctrine of Fraudulent Concealment**

Based on the facts alleged in the amended complaint and all reasonable inferences that can be drawn therefrom, the Court cannot conclude whether the applicable limitations period for Plaintiffs' claims are tolled by operation of either the discovery rule or the doctrine of fraudulent concealment. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend a pleading at any time prior to the service of a responsive pleading. Fed. R. Civ. P. 15(a). If a responsive pleading has been filed, a party may amend a pleading only upon leave of the Court or with the written consent of the adverse party. Id. In determining whether to permit a party to amend a pleading, courts recognize that leave should be "freely given when justice so requires," unless there is "any apparent or declared reason" to hold otherwise. Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend may be properly denied only if there is

"undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment." Id. at 182.

In light of the nature of the parties' dispute, the Court believes it appropriate to allow Plaintiffs to file a second amended complaint including additional facts that would be useful to a determination of when the applicable limitations periods began, and whether Plaintiffs exercised reasonable diligence. See Debiec v. Cabot Corp., 352 F. 3d 117, 129 (3d Cir. 2003) (stating that under Pennsylvania's discovery rule, the accrual of the statute of limitations may be tolled "for situations in which a party, through no fault of his or her own, does not discover [his] injury until after the statute of limitations normally would have run"); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2003) (stating that a curative amendment should be permitted unless such an amendment would be "inequitable or futile").[5]

## IV. CONCLUSION

Based on the foregoing, the Court will deny Defendants' motion to dismiss (Doc. No. 12) without prejudice. An Order consistent with this Memorandum follows.

---

[5] Given that the Court will deny Defendant's motion to dismiss without prejudice, and grant Plaintiffs leave to file a second amended complaint to include the requisite tolling allegations, the Court will not consider the remaining grounds upon which Defendant seeks dismissal at this time.