**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD SOUTNER & JANELLE | : | |
| SOUTNER, | : | |
| Plaintiffs | : | No. 1:17-cv-02178 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| COVIDIEN, LP, | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is Defendant Covidien, LP ("Defendant")'s motion to dismiss Plaintiffs

Ronald Soutner and Janelle Soutner's ("Plaintiffs") second amended complaint (Doc. No. 24),

pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 25).  For the reasons provided

herein, the Court will grant Defendant's motion.

## I.     BACKGROUND[1]

Defendant is a Delaware limited partnership headquartered in Mansfield, Massachusetts,

engaged in the design, manufacture, and sale of medical devices, including various surgical

meshes.  (Doc. No. 24 ¶¶ 3-5.)  One such mesh, Parietex ProGrip Mesh, used in hernia repair

---

[1] The following background is taken from Plaintiffs' second amended complaint.  (Doc. No. 24.)
The allegations set forth in the amended complaint are accepted as true for the purpose of the
instant motion to dismiss.  See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d
405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a 12(b)(6) dismissal, [the Court]
must accept as true the factual allegations in the complaint and all reasonable inferences that can
be drawn from them").  The Court observes that Plaintiff's second amended complaint (Doc. No.
24) contains factual averments identical to those set forth in their amended complaint, with the
exception of the sections entitled "Plaintiff Specific Facts" (id. at 8) and "Estoppel [f]rom
Pleading Statutes of Limitations or Repose" (id. at 11).  As a result, this background is
substantially similar to the background provided in the Court's Memorandum dated October 26,
2018 (Doc. No. 22), issued in connection with an Order denying Defendant's motion to dismiss
Plaintiff's amended complaint without prejudice (Doc. No. 12).

surgeries, was implanted in Plantiff Ronald Soutner ("Soutner") during a surgical procedure on December 20, 2011, and is the subject of the instant action. (Id. ¶ 4.)

Hernias are caused by the "penetration of fatty tissue, intestine, or organs through a weakened or compromised location in muscle of [sic] connective tissue." (Id. ¶ 13.) As stated in the second amended complaint, hernia repairs are "common surgeries" – they are performed in the United States more than one million times each year – and inguinal hernia repairs make up approximately 80% of those procedures. (Id. ¶ 17.) Surgical mesh, including Defendant's Parietex ProGrip Mesh, is used during hernia repair surgeries to "strengthen the repair." (Id. ¶ 19.) Defendant's Parietex ProGrip Mesh is intended for permanent implantation in a patient's body. (Id. ¶ 6.)

According to Plaintiffs, unlike most hernia mesh products, which are polypropylene based, Defendant's Parietex ProGrip Mesh is made of monofilament polyester, which Plaintiffs allege is "flimsy" compared to polypropylene. (Id. ¶¶ 31, 42.) Plaintiffs aver that, as a result, surgeons reported difficulty in handling Defendant's Parietex ProGrip Mesh during hernia repair surgeries. (Id. ¶ 43.) Plaintiffs state that to remedy this issue, Defendant added a layer of collagen to the Parietex ProGrip Mesh, which was intended to make the mesh easier to handle during surgeries. (Id. ¶ 44.) In addition, Plaintiffs allege that Defendant attached micro-grips to the Parietex ProGrip Mesh to prevent the mesh from tearing. (Id. ¶¶ 46-47.) Plaintiffs further aver that the micro-grips have caused patients who have been implanted with the Parietex ProGrip Mesh to experience "debilitating pain" due to the Parietex ProGrip Mesh "contracting and pulling on all of the tissues and nerves upon which it is attached." (Id. ¶ 48.)

On December 20, 2011, Soutner underwent surgery to repair an inguinal hernia on the left side of his groin. (Id. ¶ 50.) During this procedure, Defendant's Parietex ProGrip Mesh was

implanted into Soutner to "reinforce tissue affected by the hernia." (Id. ¶¶ 50, 52.) At some point following the procedure, Soutner experienced severe inflammation in the region where the procedure was performed. (Id. ¶ 55.) According to Plaintiffs, the inflammation was so severe that Soutner's vas deferens was "destroyed." (Id.) On October 7, 2013, Soutner underwent an additional surgical procedure, at which time Defendant's Parietex ProGrip Mesh was removed. (Id. ¶ 53.) During the second procedure, it was determined that "Defendant's Parietex ProGrip Mesh integrated to the surrounding muscles where it had to be dissected off." (Id. ¶¶ 53-54.) During this second procedure, Soutner's vas deferens was removed. (Id. ¶ 55.) Plaintiffs allege that, following the second procedure, Soutner has experienced and continues to experience groin pain and life without his vas deferens. (Id. ¶ 57.) Plaintiffs further allege that as a direct and proximate result of the implanted mesh products, Soutner "suffered, is suffering, and/or will continue to suffer the abovementioned injuries, including the risk of malfunction, decreased efficacy, recurrent hernia, perforation of tissue and/or organs, adherence to tissue/organs, infection, nerve damage, subsequent surgeries, and other complications." (Id. ¶ 65.)

Plaintiffs allege that Soutner, through the exercise of reasonable diligence, could not have discovered his injury was caused by Defendant's mesh product because his physicians "were not informed by Defendant that these injuries could result from the implantation of Defendant[']s faulty mesh product." (Id. ¶ 59.) Plaintiffs further allege that Soutner "did not know and could not have known that he was injured and that his injuries were caused by Defendant's defective product until he saw a commercial in 2017 which enlightened him to the fact that he was, in fact, injured and that his injuries could have been caused by the conduct of another." (Id. ¶ 62.) Plaintiffs also allege that Soutner is "not employed in the medical field and was not privy to the same sophisticated medical information as Defendant, who negligently and fraudulently

concealed the fact that these injuries could, and did in fact, result from its defective mesh product." (Id. ¶ 61.)

After experiencing the injuries described supra, Soutner commenced this action by filing a complaint against Defendant on October 27, 2017, in the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. No. 1 at 10.) In his initial complaint, Soutner asserted the following ten claims against Defendant: strict liability based on defective design and manufacture (Count I); strict liability due to a failure to warn (Count II); negligence (Count III); breach of warranty (Count IV); fraudulent misrepresentation (Count V); negligent misrepresentation (Count VI); unjust enrichment (Count VII); breach of express warranty (Count VIII); breach of implied warranty of merchantability (Count IX); and breach of implied warranty of fitness (Count X). (Id. at 21-36.) On November 28, 2017, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Id. at 2.) Soutner filed an amended complaint on January 12, 2018, adding his wife Janelle Soutner as a plaintiff and asserting additional claims for punitive damages (Count XI), and loss of consortium (Count XII). (Doc. No. 8 at 25-27.) On February 26, 2018, Defendant filed a motion to dismiss all of the aforementioned claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 12), and filed a brief in support thereof on March 12, 2018 (Doc. No. 15). Plaintiffs filed their brief in opposition to Defendant's motion to dismiss on March 27, 2018 (Doc. No. 18), to which Defendants filed a brief in reply on April 10, 2018 (Doc. No. 19). The Court issued an Order and accompanying Memorandum on October 26, 2018, denying Defendant's motion and giving Plaintiff's leave to amend their complaint for a second time. (Doc. Nos. 22, 23.)

On November 21, 2018, Plaintiffs filed a second amended complaint, adding new allegations related to the applicable statutes of limitations. (Doc. No. 24.) On December 5,

2018, Defendant filed a motion to dismiss Plaintiffs' second amended complaint (Doc. No. 25), and a filed a brief in support thereof on December 19, 2018 (Doc. No. 30). On January 10, 2019, Plaintiffs filed a brief in opposition (Doc. No. 37), to which Defendant filed a reply on January 24, 2019 (Doc. No. 39). Having been fully briefed, Defendant's motion to dismiss is ripe for disposition.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the

assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, a court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citation and quotation marks omitted).

The Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 8(c)). The Third Circuit, however, "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Id. (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092 (3d Cir. 1975)). Where a complaint "is vulnerable to 12(b)(6)

dismissal, a district court must permit a curative amendment unless such an amendment would inequitable or futile." Phillips v. Cty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).

## III. DISCUSSION

Defendant argues that Plaintiffs' six tort-based claims[2] and five contract-based claims[3] are barred by operation of the applicable statutes of limitations (Doc. No. 30 at 1), and Plaintiffs' claim for punitive damages should be dismissed because Plaintiffs have not sufficiently alleged that Defendant acted with reckless indifference (id. at 53). Defendant further argues that even if Plaintiffs' claims were not time-barred, all of the claims should be dismissed because they are either precluded by Pennsylvania law or pleaded inadequately. (Id. at 1.) Plaintiffs argue that either Pennsylvania's discovery rule or the doctrine of fraudulent concealment tolls the applicable limitations period and renders their claims timely. (Doc. No. 37 at 1.) Plaintiffs also state that they have sufficiently pleaded their claims against Defendant. (Id.)

### A. Applicable State Law

A federal court applies the substantive law of its forum state in diversity actions, including statutes of limitations.[4] See Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Guaranty Tr. Co. v. York, 326 U.S. 99 (1945); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Pennsylvania law, the limitations period applicable to Plaintiffs' tort-based

---

[2] Plaintiffs' tort-based claims include: strict liability (Counts I and II); negligence (Count III); and misrepresentation (Counts V and VI). Plaintiff Janelle Soutner's loss of consortium claim (Count XII) is subject to the limitations period applicable to tort-based claims because it "is a derivative claim, and is, therefore, governed by the statute of limitations of the source claim." See Watson v. Bd. of Dirs. of Wm. Penn Sch. Dist., No. 05-5760, 2006 WL 2506359, at *3 (E.D. Pa. Aug. 29, 2006) (citing Patterson v. Am. Bosch Corp., 914 F.2d 384, 386 n.4 (3d Cir. 1990)).
[3] Plaintiffs' contract-based claims include: breach of warranty (Counts IV, VIII-X), and unjust enrichment (Count VII).
[4] The parties agree that Pennsylvania law applies to all of Plaintiffs' claims. Accordingly, the Court examines the timeliness of the claims under the limitations periods recognized by Pennsylvania law.

claims is two years.  See 42 Pa. C.S.A. § 5524(2).  There are two statutes that establish a

limitations period for claims based on breach of contract in Pennsylvania: one governing

contracts for the sale of goods and the other governing all other contracts.  See 13 Pa. C.S.A. §

2725; 42 Pa. C.S.A. § 5525(a).  Plaintiffs assert five contract-based claims, four of which are

breach of warranty claims and one of which is an unjust enrichment claim.  (Doc. No. 24 at 16,

21, 22, 24, 25.)  Plaintiffs' breach of warranty claims are subject to Pennsylvania's four-year

statute of limitations found in 13 Pa. C.S.A. § 2725(b), and Plaintiffs' unjust enrichment claim is

subject to Pennsylvania's four-year statute of limitations applicable to contracts implied in law,

as established in 42 Pa. C.S.A. § 5524(a)(4).  See, e.g., Martin v. Ford Motor Co., 765 F. Supp.

2d 673, 686 (E.D. Pa. 2013).

With regard to the accrual of the various claims asserted by Plaintiffs, under

Pennsylvania law, contract claims accrue "when 'tender of delivery [of the product] is made.'"

See White v. Medtronic, Inc., No. 16-2638, 2016 WL 4539494, at * 3 (E.D. Pa. Aug. 31, 2016)

(quoting 13 Pa. C.S.A. § 2725(b)).  When determining the timeliness of a certain tort claim,

Pennsylvania law recognizes the general proposition that a cause of action accrues, and thus the

applicable statutory limitations period begins to run, when the injury forming the basis of the

action occurs.  See, e.g., Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005).  There are exceptions to

this general rule, two of which Plaintiffs contend are applicable in this case: the discovery rule

and the doctrine of fraudulent concealment.  (Doc. No. 37 at 6.)

### 1.  Discovery Rule – Applicable Legal Standard

"The discovery rule is designed to 'ameliorate the sometimes-harsh effects of the statute

of limitations,' and it is often applied in medical malpractice and latent disease cases in which

the plaintiff is unable to discover his or her injury until several years after the tort occurred."

Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) (quoting Cathcart v. Keene Indus. Insulation, 471 A.2d 492, 500 (Pa. Super. Ct. 1984)). The rule tolls the accrual of the statute of limitations when the plaintiff is unable, "despite the exercise of due diligence, to know of the injury or its cause." See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). Under the discovery rule, the statutory period "does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured and (2) that his injury has been caused by another party's conduct.'" See id. (quoting Mest, 449 F.3d at 510). This is sometimes referred to as "inquiry notice." See Gleason v. Borough of Moosic, 15 A.3d 479, 484 (Pa. 2011). The party seeking application of the discovery rule "bears the burden of proving that reasonable diligence was exercised." See Nicolaou v. Martin, 195 A.3d 880, 893 (Pa. 2018). "To demonstrate reasonable diligence, a plaintiff must 'establish[] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protections of their own interests and the interests of others.'" Id. (quoting Cochran v. GAF Corp., 666 A.2d 245, 250 (Pa. 1995)).

In cases involving medical devices, the salient question regarding cause under Pennsylvania law is "whether a plaintiff knows or has reason to know that the device caused her injury, not whether a plaintiff has actual or constructive knowledge as to precisely how or why her injury occurred." See McLaughlin v. Bayer Essure, Inc., No. 14-7315, 2019 WL 1382710, at *5 (E.D. Pa. Mar. 27, 2019) (citing Adams v. Zimmer US, Inc., No. 17-621, 2018 WL 3913749, at *9-10 (E.D. Pa. Aug. 14, 2018)); see also Juday v. Merck & Co., 730 F. App'x 107, 110-11 (3d Cir. 2018) (considering when plaintiffs were on inquiry notice that mold was the factual cause of their injuries); Hartey v. Ethicon, Inc., No. 04-5111, 2006 WL 724554, at *3-4 (E.D. Pa. Mar. 20, 2006) (considering when plaintiff knew or should have know that her injuries were

caused by Mersilene mesh); <u>Debiec v Cabot Corp.</u>, 352 F.3d 117, 120 (3d Cir. 2003) (considering when plaintiff knew or should have known that his injuries were caused by exposure to beryllium); <u>Dreischalick v. Dalkon Shield Claimants Tr.</u>, 845 F. Supp. 310, 315 (W.D. Pa. 1994) (considering when plaintiff knew or should have known of a possible causal relationship between her IUD and her ectopic pregnancy).

The Supreme Court of Pennsylvania has clarified that reasonable diligence is not "an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." <u>See</u> <u>Fine</u>, 870 A.2d at 858. "'[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.'" <u>Id.</u> (alterations in original) (quoting <u>Crouse v. Cyclops Indus.</u>, 765 A.2d 606, 611 (Pa. 2000)). "Put another way, [t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him." <u>Id.</u> (quoting <u>Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.</u>, 31 A. 484, 485 (Pa. 1895)). Pennsylvania applies the discovery rule narrowly, placing a heavy burden on plaintiffs invoking the rule. <u>See</u> <u>Gleason</u>, 15 A.3d at 484. "Where . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the [C]ourt determines that the discovery rule does not apply as a matter of law." <u>Fine</u>, 870 A.2d at 858-59 (citing <u>Pocono Int'l</u>, 468 A.2d at 471).

## 2. Doctrine of Fraudulent Concealment – Applicable Legal Standard

Like the discovery rule, the doctrine of fraudulent concealment tolls the running of the limitations period. <u>See</u> <u>id.</u> at 860. "The doctrine is based on a theory of estoppel, and provides

that the defendant may not invoke the statute of limitations if through fraud or concealment, he causes plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Id. (citing Deemer v. Weaver, 187 A. 215 (1936)).  "Fraudulent concealment may be intentional or unintentional; however, 'mere mistake, misunderstanding, or lack of knowledge is insufficient.'" Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991) (quoting Nesbitt v. Erie Coach Co., 204 A.2d 473 (Pa. 1964)).

Under Pennsylvania law, in order to assert the doctrine of fraudulent concealment, "the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied.  Mere mistake or misunderstanding is insufficient.  Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." See McLaughlin, 2019 WL 1382710, at *8-9 (quoting In re Risperdal Litig., Nos. 576 EDA 2015, 590 EDA 2015, 2017 WL 5256400, at *7 (Pa. Super. Ct. Nov. 13, 2017)).  Therefore, "in order to assert a viable claim of fraudulent concealment based on affirmative misrepresentations, a plaintiff must identify specific misrepresentations on which she relied to her detriment, i.e., on which she relied in 'relax[ing] [her] vigilance or deviat[ing] from [her] right of inquiry into the facts.'" See McLaughlin, 2019 WL 1382710 at * 9 (quoting Fine, 870 A.2d at 860).

Like the discovery rule, however, the doctrine of fraudulent concealment "does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." See Mest, 449 F.3d at 516 (citing Bohus, 950 F.2d at 925-26).  "The standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment." Fine, 870 A.2d at 861.

## B. Plaintiffs' Tort-Based Claims (Counts I – III, V, VI)

### 1. Arguments of the Parties

In moving for dismissal of Plaintiffs' tort-based claims, Defendant argues that Plaintiffs' claims accrued more than four years prior to the Plaintiffs' filing of their original complaint. (Doc. No. 30 at 20.) Defendant states that as of Soutner's October 7, 2013 procedure, at which time Defendant's mesh and Soutner's vas deferens were removed, Plaintiffs possessed the facts necessary to understand that Soutner had been injured and to ascertain the cause of the injury. (Id. at 20-21.) Defendant further states that "that procedure provided sufficient knowledge to Plaintiffs to trigger the two-year limitations period, even if Plaintiffs did not yet know the precise medical cause of the injury." (Id. at 21.) Defendant argues that Plaintiffs filed their original Complaint more than four years later, on October 27, 2017, and that, as a result, "Counts I-III, V, and XII are untimely and should be dismissed." (Id.)

Plaintiffs argue that the limitations period for Plaintiffs' claims was tolled until 2017 "because Plaintiffs, through reasonable diligence, did not know the 'cause' of the claimed injuries and could not have determined that the claimed injuries were caused by Defendant's conduct until Plaintiffs discovered that the alleged injuries resulting from the [m]esh may have been caused by another party's conduct in 2017." (Doc. No. 37 at 9.) Further, Plaintiffs argue that they were "unaware that Defendant's conduct, including making and selling the [m]esh defectively and misrepresenting and concealing material facts regarding the [m]esh, could be the cause of the resulting injuries as alleged." (Id.) Plaintiffs also state that they had "no reason to investigate the 'cause' of the claimed injuries, or whether said 'cause' . . . was due to the conduct of another party." (Id. at 10.) Plaintiffs assert that they exercised reasonable diligence because, as laypersons, they should not be held to a higher standard of knowledge than a physician and

Soutner's physician "never informed [Soutner] that his injuries were caused by Defendant's conduct." (Id. at 10-11.)

### 2. Whether the Limitations Period Applicable to Plaintiffs' Tort-Based Claims is Tolled by Operation of the Discovery Rule or the Doctrine of Fraudulent Concealment

The Court concludes that Plaintiffs' tort-based claims, Counts I-III, V, VI and XII, are time-barred by operation of Pennsylvania's two-year statute of limitations. Plaintiffs' argument that they exercised reasonable diligence yet still could not know the cause of Soutner's injuries is unpersuasive. The Pennsylvania Supreme Court has held, with regard to the discovery rule, that:

> Pennsylvania's formulation of the discovery rule represents a more narrow approach and places a greater burden on plaintiffs than other jurisdictions because the commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.

See Nicolaou, 195 A.3d at 892 (internal quotation marks omitted). Further, "it is well-settled that the reasonable diligence standard is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law." Id. at 893 (citing Gleason, 15 A.3d at 485).

Plaintiffs allege that at the time of Soutner's second procedure, Defendant's mesh product had "integrated to the surrounding muscles, where it had to be dissected off" (Doc. No. 24 ¶ 54), and that Defendant's mesh product "caused severe inflammation to the surrounding structures, specifically the vas deferens, which 'was destroyed with inflammation and was removed in its entirety'" (id. ¶ 55). Additionally, Soutner experienced "noted inflammation toward the cord structures." (Id. ¶ 56.) These allegations demonstrate that the injuries Soutner suffered were not latent injuries, which are typically associated with the discovery rule. See Wilson, 964 A.2d at 361-62 ("In certain cases involving latent injury, and/or instances in which

13

the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct."). The Court finds that Plaintiff Ronald Soutner's second surgical procedure, on October 7, 2013, was sufficient to place Soutner on notice of the cause of his injury. Further, Plaintiffs' argument that they were unaware that "Defendant's conduct including making and selling the [m]esh defectively and misrepresenting and concealing material facts regarding the [m]esh, could be the cause of the resulting injuries as alleged" (Doc. No. 37 at 9) is inapposite. Pennsylvania law does not require that Plaintiffs know the "the full extent of the injury, the fact of actual negligence, or precise cause." See Gleason, 15 A.3d at 484. Given the severe inflammation at the site of the mesh, the fact that both Defendant's mesh and Soutner's vas deferens were removed during the second procedure, and the fact that Soutner's injuries were known to Plaintiffs at the time of his second procedure, Plaintiffs had inquiry notice of the alleged cause as of the date of Soutner's second procedure. The Court concludes, therefore, that the facts as pled do not support a claim that Plaintiffs exercised reasonable diligence in seeking to discover the alleged cause of Soutner's injuries.

Plaintiffs also argue that they had no reason to investigate the cause of Soutner's alleged injuries, or whether the cause was the result of another party's conduct and, as a result, the applicable statutes of limitations for their claims should be tolled. (Doc. No. 37 at 10.) In making this argument, Plaintiffs cite to the following passage from Foulke v. Dugan, 187 F. Supp. 2d 253 (E.D. Pa. 2002): "[w]here the plaintiff has no reason to investigate, the statute will be tolled." Id. at 258. As Defendant correctly points out, however, this citation omits a relevant piece of the Foulke court's analysis, stating that "if there is something to trigger the inquiry, then

the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury." See Foulke, 187 F. Supp. 2d at 258. As the Court noted supra, the second procedure involved the removal of Defendant's mesh and Soutner's vas deferens, which was "destroyed with inflammation." (Doc. No. 24 ¶ 55.) To the extent Plaintiffs did not understand the cause of Soutner's injuries at the time of the second procedure, the removal of Defendant's mesh and Soutner's vas deferens should have triggered an inquiry into the cause of the injuries. Plaintiffs have not alleged, however, that they conducted an investigation into Soutner's injuries and were unable to discover them.

While the objective reasonable diligence standard is "sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question," see Fine, 870 A.2d at 858 (citing Crouse, 745 A.2d at 611), and the standard "is to be applied with reference to individual characteristics," see Wilson v. El-Daief, 964 A.2d 354, 366 (Pa. 2009), Plaintiffs have not sufficiently alleged that they were unable to comprehend Soutner's injuries at the time of the second procedure. Plaintiffs allege that they could not have discovered Soutner's injuries were caused by Defendant's mesh because Soutner and his physicians "were not informed by Defendant that these injuries could result from the implantation of Defendant's faulty mesh product." (Doc. No. 24 ¶ 59.) Plaintiffs further allege that Soutner "did not know he was injured or by what cause" (id. ¶ 60), and that he "is not employed in the medical field and was not privy to the same sophisticated medical information as Defendant" (id. ¶ 61). These allegations are insufficient to show that Plaintiffs lacked inquiry notice of Soutner's injuries and their alleged cause. See Gleason, 15 A.3d at 484 (stating that the statute of limitations "begins to run upon the plaintiff's knowledge of her injury and of a factual cause linked to another's conduct, without the

necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause").

As stated supra, the party seeking application of the discovery rule "bears the burden of proving that reasonable diligence was exercised," see Nicolaou, 195 A.3d at 893, and under the reasonable diligence standard, a plaintiff's actions are examined to determine whether a plaintiff demonstrated "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and interest of others." See Fine, 870 A.2d at 858. Here, the allegations included in Plaintiffs' second amended complaint demonstrate that Plaintiffs were aware of Soutner's injuries and had inquiry notice of the cause of Soutner's injuries at the time of Soutner's second procedure. The Court concludes the discovery rule is inapplicable here.

The doctrine of fraudulent concealment similarly does not operate to toll the statute of limitations. The identical reasonable diligence standard applicable in the discovery rule context applies when a plaintiff seeks to toll the limitations period by operation of the doctrine of fraudulent concealment. See Urland v. Merrell-Dow Pharms., Inc., 822 F.2d 1268, 1273 (3d Cir. 1987) (acknowledging that "the [Pennsylvania] Supreme Court . . . views tolling of the statute of limitations in terms of the same 'knew or should have known' standard whether the statute is tolled because of the discovery rule or because of fraudulent concealment").

Given that the Court has determined that the discovery rule does not operate to toll the limitations period because Plaintiffs had inquiry notice of Soutner's injuries at the time of his second procedure, the Court similarly concludes that the doctrine of fraudulent concealment is

inapplicable, as well.[5]  Pennsylvania's two-year limitations period applicable to Plaintiffs' tort-based claims began to run on October 7, 2013, and as a result, the limitations period expired in October of 2015.  Accordingly, the Court will grant Defendant's motion as to Counts I-III, VI and XII of the second amended complaint.

### C.    Plaintiffs' Contract-Based Claims (Counts IV, VII-X)

#### 1.    Arguments of the Parties

Defendant states that Plaintiffs' four warranty-based claims, as well as Plaintiffs' unjust enrichment claim, are governed by Pennsylvania's four-year statute of limitations.  (Doc. No. 30 at 21.)  Defendant further argues that Plaintiffs' contract claims accrued upon tender of delivery of Defendant's mesh (id. at 21-22), and that, as a result, Plaintiffs' warranty and unjust enrichment claims "expired at the latest as of December 20, 2015."  (Id. at 22.)

Plaintiffs state that their contract-based claims are timely because "under the doctrine of fraudulent concealment . . . [D]efendant may not invoke the statute of limitations, if through fraud or concealment, he causes the Plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."  (Doc. No. 37 at 15.)  Plaintiffs further allege that the limitations period is tolled "because of Defendant's fraudulent and express warranties for future performance."  (Id.

---

[5] Even if the Court concluded that Plaintiffs did act with reasonable diligence in seeking to discover Soutner's injuries and their cause, Plaintiffs have not made sufficient allegations to demonstrate the doctrine of fraudulent concealment is applicable.  Because fraudulent concealment must be based on "independent affirmative act[s] of concealment," see Arndt v. Johnson & Johnson, 67 F. Supp. 3d 673, 678 (E.D. Pa. 2014) (citing Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 278 (Pa. Super. Ct. 2005)), the "affirmative efforts to divert, mislead, or prevent discovery" that give rise to the fraudulent concealment must be "conduct independent of the . . . things about which the plaintiffs complain" in their causes of action.  See Overfield v. Pennroad Corp., 146 F.2d 889, 896 (3d Cir. 1944); see also Bailey v. Jacobs, 189 A. 320, 330 (Pa. 1937) (stating that fraudulent concealment must be "an act additional to the illegal transaction itself").  Plaintiffs do not allege any independent acts of concealment by Defendant, and thus they cannot assert the doctrine of fraudulent concealment as a basis for tolling the statute of limitations.

at 15-16.)  Defendant argues, in reply, that Plaintiffs' allegations as to the existence of express

warranties for future performance, an exception to the statute of limitations, were made for the

first time in Plaintiffs' opposition brief.  (Doc. No. 39 at 8-9.)  Defendant states that "Plaintiffs

fail to identify any allegations in the [second amended complaint] as to the nature, source, or

content of those supposed warranties; indeed, no such warranties exist."  (Doc. No. 39 at 9.)

### 2. Whether the Limitations Period Applicable to Plaintiffs' Contract-Based Claims is Tolled by Operation of the Doctrine of Fraudulent Concealment

The Court finds that upon review of the allegations in the second amended complaint, as

well as the relevant authority, Plaintiffs' contract-based claims for breach of warranty and unjust

enrichment are time-barred.  Under Pennsylvania law, the statute of limitations for a breach of

warranty claim is four years.  See 13. Pa. C.S.A. § 2725(a); Zaleski v. Melt Rest., No. CV 15-

2552, 2016 WL 3087392, at *3 (E.D. Pa. June 1, 2016).  Breach of warranty claims, unlike tort-

based claims, are not subject to the discovery rule.  See White v. Hon Co., No. 11-4919, 2012

WL 1286404, at *4 (E.D. Pa. Apr. 13, 2012) ("The tort discovery rule does not apply to breach

of warranty actions."); Patton v. Mack Trucks, Inc., 519 A.2d 959, 964-65 (Pa. Super. Ct. 19876)

(stating that "the aggrieved party's knowledge or ability to know [of the breach] is irrelevant,"

and that it does not matter "that the aggrieved party cannot possibly discover the breach until

after tender of delivery").  Ordinarily, a cause of action for breach of warranty accrues when the

seller makes tender of delivery; however, if the warranty "explicitly extends to future

performance of the goods and discovery of the breach must await the time of such performance,"

the cause of action accrues when the breach is or should have been discovered.  See 13 Pa.

C.S.A. § 2725(b).  Implied warranties of merchantability and fitness for a particular purpose do

not explicitly extend to future performance, however, and thus the exception found at § 2725(b)

does not apply. See Nationwide Ins. Co. v. Gen. Motors Corp., 625 A.2d 1172, 1178 (Pa. 1993) (finding implied warranty claims barred by the statute of limitations). Therefore, a cause of action for breach of implied warranty accrues upon tender of delivery. See id.; see also Busche v. Monaco Coach Corp., No. 06-3801, 2006 WL 3302477, at *4 (E.D. Pa. Nov. 13, 2006) (dismissing implied warranty claims as time-barred because they accrued on the date tender of delivery was made).

Plaintiffs allege that the limitations period applicable to their breach of warranty claims was "tolled because of Defendant's fraudulent and express warranties for future performance." (Doc. No. 37 at 16.) Plaintiffs do not, however, provide any additional allegations in their second amended complaint as to these warranties for future performance. Without additional allegations detailing the explicit warranties for future performance of Defendant's mesh, the Court will not accept as true Plaintiff's assertion that Defendant's mesh contained any express warranty for future performance. See Morse, 132 F.3d at 906 (providing that a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss"). As a result, any breach of warranty cause of action related to Defendant's mesh accrued on December 20, 2011, the date of Soutner's first surgery. Because claims for breach of implied warranty accrue when tender of delivery is made, regardless of explicit warranties as to future performance, see Busche, 2006 WL 3302477, at *4, and given that Plaintiffs have not sufficiently alleged that Defendant's mesh included express warranties for future performance, it follows that the limitations period applicable to Plaintiffs' breach of warranty claims expired on December 20, 2015. See Hartey v. Ethicon, Inc., No. 04-5111, 2006 WL 724554, at *2 (E.D. Pa. Mar. 20, 2006) (finding the plaintiff's claim for breach of warranty time-barred because the

claim accrued on the date that the defendant's mesh had been used in the plaintiff's operation, more than four years prior to the filing of the plaintiff's suit).

Plaintiffs' unjust enrichment claim is also subject to a four-year statute of limitations. See White v. PNC Fin. Servs. Grp., Inc., No. 11-7928 2014 WL 4063344, at *8 (E.D. Pa. Aug. 18, 2014) ("Under Pennsylvania law . . . unjust enrichment has a four-year statute of limitations."). As established supra, Plaintiffs cannot assert either the discovery rule or the doctrine of fraudulent concealment to toll the applicable statute of limitations. As a result, Plaintiffs' claim for unjust enrichment accrued on December 20, 2011, the date of Soutner's first procedure, and expired on December 20, 2015. Accordingly, the Court will grant Defendant's motion as to Counts IV, VII, VIII, IX, and X of the second amended complaint.

### D. Plaintiffs' Claim for Punitive Damages (Count XI)

In Pennsylvania, punitive damages are "an extreme remedy available in only the most exceptional matters." See Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (internal quotation marks omitted). Punitive damages are appropriate only when a plaintiff "has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" See id. (quoting Martin v. Johns-Manville Corp., 494 A.2d 1088, 1096 (Pa. 1985)). Plaintiffs have not pleaded any cognizable claims that would permit the Court to determine whether an award of punitive damages would be appropriate. Accordingly, the Court will grant Defendant's motion as to Count XI of Plaintiffs' second amended complaint.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to dismiss in its entirety. (Doc. No. 25.) An Order consistent with this Memorandum follows.